**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laurie A Vaught, | No. CV-23-02065-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Laurie Vaught's ("Plaintiff") appeal from the Commissioner of Social Security Administration's ("SSA" or "Defendant") denial of social security disability benefits. (Doc. 1). Plaintiff filed her opening brief on February 5, 2024, (Doc. 13), Defendant responded on March 6, 2024, (Doc. 15), and Plaintiff filed a reply on March 20, 2024, (Doc. 16). The Court now rules.

**I.    BACKGROUND**

The issues presented in this appeal relate to the administrative law judge's ("ALJ") residual functional capacity ("RFC") determination and are the following: (1) whether the ALJ failed to provide a proper consistency and supportability analysis when evaluating the assessments of examining physician Glenn Kunsman, D.O. ("Dr. Kunsman") and treating neurologist Darry Johnson, M.D. ("Dr. Johnson"), and (2) whether the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. (Doc. 13 at 1).

///

### A. Factual Overview

Plaintiff filed an application for benefits on March 5, 2020, alleging disability beginning on June 14, 2019. (Doc. 8-3 at 26). Her claim was denied initially and upon reconsideration. (*Id.*). The ALJ conducted a hearing on October 4, 2021. (*Id.*). After the hearing, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of June 14, 2019, through the date of the ALJ's decision, December 9, 2022. (*Id.* at 41).

### B. The SSA's Five-Step Evaluation

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows.

First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

At step two, if the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.* § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

At step three, having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "[RFC] based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's RFC is the most she can still do despite all her impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares the RFC assessment with "the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See* 20 C.F.R. §§ 404.1527, 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

**C. The ALJ's Application of the Five-Step Evaluation Process**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 14, 2019, the alleged onset date. (Doc. 8-3 at 29).

At step two, the ALJ found that since the alleged onset date, Plaintiff had the

following severe impairments: "[f]ibromyalgia; chronic fatigue syndrome; degenerative disc disease of the cervical spine." (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.* at 32). Thus, the ALJ made an RFC determination and found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except that [Plaintiff] can engage in only occasional bilateral overhead reaching, and can no more than frequently reach in other directions, frequently handle, and frequently finger, bilaterally. [Plaintiff] can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. [Plaintiff] can frequently balance, stoop, kneel, and crouch, but can never crawl. [Plaintiff] can never work in the presence of unprotected heights or hazardous machinery and should not be required to operate a motor vehicle as part of her job duties. [Plaintiff] can never work in the presence of concentrated exposure to extreme heat, cold, or vibration.

(*Id.* at 33–34).

At step four, the ALJ found that Plaintiff is capable of performing past relevant work "as an Accounting Clerk, as a Bookkeeper, and as a Payroll Clerk," as that work "does not require the performance of work-related activities precluded by [Plaintiff's RFC]." (*Id.* at 40).

Because the ALJ found Plaintiff to be capable of performing past relevant work, the ALJ did not proceed to step five. The ALJ found that Plaintiff was not under a disability from the alleged onset date through the date of the ALJ's decision. (*Id.* at 41).

## II.   LEGAL STANDARD

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Reddick*, 157 F.3d at 720 (internal citation omitted). In other words, substantial evidence means "such relevant evidence as a

reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (internal citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the "record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the" ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (internal citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see also Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision and the decision is free from legal error, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

### III.    DISCUSSION

The Court addresses Plaintiff's claims of error in reverse order, beginning with Plaintiff's symptom testimony and concluding with the two physician's opinions.

#### A. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ's "general medical summary and overall conclusion that [Plaintiff's] symptom testimony was unsupported and/or 'not entirely consistent with the record'" fails to satisfy the SSA's requirements. (Doc. 13 at 22). Plaintiff avers that the ALJ erred because "the ALJ's entire credibility evaluation was based on the ALJ's belief that the objective medical evidence failed to support or was inconsistent with [Plaintiff's] symptom testimony," which Plaintiff argues is an insufficient basis. (*Id.* (citation omitted)). Plaintiff asserts that the ALJ relied on normal findings unrelated to Plaintiff's main impairments of chronic fatigue syndrome and fibromyalgia, and such normal findings do not show inconsistencies between Plaintiff's testimony and the objective medical record. (*Id.* at 22–23). Finally, Plaintiff argues that because the vocational expert ("VE") testified that limitations congruent with Plaintiff's testimony would "interfere with the ability to perform any sustained work," and because the ALJ improperly discounted Plaintiff's testimony, the Court should remand for immediate benefits. (*Id.* at 23).

Defendant argues that the ALJ cited "specific, clear, and convincing examples that contrasted with Plaintiff's claims," pointing to inconsistencies with "(1) the objective medical evidence and (2) the fact that Plaintiff worked for quite some time with these same impairments." (Doc. 15 at 13). Defendant asserts that the ALJ thus did not rely on just contradiction with the objective medical evidence, but even if she did, the Ninth Circuit has held that such contradictions can be a sufficient reason for discounting testimony. (*Id.* at 15 (citation omitted)). Defendant also avers that Plaintiff's presentation as "alert" and with "normal muscle mass" indeed contradicts Plaintiff's claims that her subjective symptoms caused "specific functional limitations, such as difficulty sitting, standing, walking, lifting, and using her hands." (*Id.* at 15–16).

In assessing the credibility of a claimant's testimony regarding subjective pain or

the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain the credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)).

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and his reliance is supported by substantial evidence, the Court "'may not engage in second-guessing.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

Here, the ALJ first provided a detailed history of Plaintiff's reported symptoms in comparison with the objective findings during the same time. (Doc. 8-3 at 35). For example, the ALJ noted the following objective medical evidence: "no signs of any underlying neurological abnormality," "full 5/5 motor strength in [Plaintiff's] bilateral upper extremities," "a five day electroencephalogram test found no evidence of

epileptiform activity corresponding to [Plaintiff's] allegations," "hand coordination remained grossly normal," and "no evidence of sleep apnea or hypoxemia," among other objective findings contradictory to Plaintiff's testimony. (*Id.*).

The ALJ further analyzed the objective medical evidence on record as it related to Plaintiff's alleged impairments with (1) mobility and (2) lifting capacity and general use of her hands. (*Id.* at 36–37). Regarding mobility, the ALJ noted the following objective findings: "normal unassisted gait," "able to get on and off the examining table without noted difficulty," and "no noted gait instability," citing to numerous instances in the record in which such findings were made. (*Id.* at 36). Regarding lifting capacity and general use of hands, the ALJ noted that any discernible issues "appear[] to have resolved prior to [Plaintiff's] alleged onset date" and pointed to the following objective findings from the record: "full 5/5 strength bilaterally," "full 5/5 motor strength in all extremities," "normal sensation and fine motor skills," and "observably normal motor strength and sensation," again citing to numerous instances in the record in which such findings were made. (*Id.* at 37). Finally, the ALJ acknowledged that Plaintiff's degenerative disc disease "supports some degree of limitation on her lifting capacity," and thus adjusted the RFC accordingly. (*Id.*). The ALJ ultimately concluded that "there is little objective evidence to support [Plaintiff's] alleged degree of fatigue and weakness." (*Id.*).

The Court is unpersuaded by Plaintiff's argument that the objective medical evidence to which the ALJ cited did not contradict Plaintiff's testimony. The ALJ cited to the above evidence because it directly addressed Plaintiff's testimony. As the ALJ noted, Plaintiff alleged that she "could walk for no more than thirty minutes," "experienced frequent falls due to her symptoms," "could lift no more than a maximum of ten pounds, and that she had frequently experienced difficulty using her hands for gross manipulative activities." (*Id.* at 34). The consistent evidence of Plaintiff's normal gait and unassisted walking thus contradict her allegations about walking and falls; the consistent evidence of normal strength and fine motor skills contradict her allegations about lifting and using her hands.

Additionally, the ALJ cited to numerous instances in the record in which Plaintiff showed "generally normal observable physical function . . ., with no evidence of neurological deficits or signs of acute distress," as well as observation that Plaintiff "remained alert and oriented, with cogent thought processes." (*Id.* at 31, 38). Such objective medical evidence undermines the alleged severity of Plaintiff's fibromyalgia in particular. *See Franchino v. Kijakazi*, No. 21-17140, 2022 WL 16548014, at *1 (9th Cir. Oct. 31, 2022) (explaining that presenting as "alert, active, and in no acute distress" contradicted alleged severe fibromyalgia symptoms).

Considering the above, the ALJ did not commit reversible error in her decision to partially discount Plaintiff's subjective testimony. The ALJ discussed contradictory medical evidence in great detail, as recounted above, and contradiction in the objective medical evidence is a sufficient basis for discounting a plaintiff's subjective testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Indeed, the ALJ still assessed several limitations "out of an abundance of caution," (Doc. 8-3 at 36), accounting for the severity of impairment she found to be supported by the objective medical evidence. As such, the Court does not find reversible error on this basis.

### B. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in the evaluation of two medical opinions: Dr. Kunsman and Dr. Johnson. As of March 27, 2017, the SSA modified the rules for evaluating opinion evidence. *See* 20 C.F.R. § 404.1520c. According to the new regulations, the ALJ should "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.* § 404.1520c(a). Instead, the ALJ considers the following factors when considering a particular medical opinion in a case: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* § 404.1520c(c)(1)–(5). The most important of these factors are supportability and consistency. *Id.* §

404.1520c(a). The ALJ should "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinion or prior administrative medical findings in [a] determination or decision." *Id.* § 404.1520c(b)(2). An ALJ will "articulate how [the ALJ] considered the medical opinions" and "how persuasive [the ALJ] find[s] all of the medical opinions." *Id.* § 404.1520c(a) and (b)(1).

Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

Additionally, the ALJ does not need to weigh conclusions couched as medical opinions. "A statement by a medical source that [a claimant] is 'disabled' or 'unable to work'" is not a medical opinion. 20 C.F.R. § 404.1527(d)(1). These are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.* that would direct the determination or decision of disability." *Id.* § 404.1527(d).

### i. Dr. Kunsman

Plaintiff argues that the ALJ "failed to invalidate Dr. Kunsman's opinion concerning [Plaintiff's] excessive fatigue and need for naps throughout the day." (Doc. 13 at 14). Plaintiff further asserts that the ALJ may not assume that doctors lie to help patients to collect disability benefits. (*Id.* at 15 (citation omitted)). Plaintiff points out that "fatigue, like pain, is a subjective phenomenon that cannot be objectively verified or measured," and as such, Plaintiff argues that Dr. Kunsman was permitted to consider Plaintiff's "reports in conjunction with her treatment history and physical examination." (*Id.*).

Defendant argues that the ALJ correctly explained that Dr. Kunsman's opinion that Plaintiff needed to nap frequently was not supported by his records. (Doc. 15 at 5).

Defendant asserts that "[t]he Ninth Circuit has affirmed for decades that the ALJ may discount an opinion that relies on a claimant's subjective complaints." (*Id.* at 7 (citations omitted)). Defendant further states that the cases on which Plaintiff relies apply the old, pre-2017 standard, in which courts were directed to give treating physicians' opinions more weight—as such, Defendant argues, these cases are inapposite. (*Id.*).

The ALJ addressed Dr. Kunsman's two opinions in turn. As for Dr. Kunsman's first opinion, the ALJ found Dr. Kunsman's opinion that Plaintiff is capable of exertional activities equivalent to light work to be supported by Dr. Kunsman's objective observations that Plaintiff "walked with a normal unassisted gait, displaying full 5/5 motor strength, intact sensation, and normal range of motion." (Doc. 8-3 at 38). However, the ALJ found that Dr. Kunsman's opinion regarding Plaintiff's need for frequent naps "appear[ed] unsupported outside of [Plaintiff's] subjective allegations," and as such, was "overly restrictive." (*Id.* at 38–39). The ALJ thus partially discounted Dr. Kunsman's first opinion.

Regarding Dr. Kunsman's second opinion, the ALJ noted that Dr. Kunsman "offered essentially no support . . . beyond recounting [Plaintiff's] subjective complaints, specifically stating that even after extensive medical testing and physical examinations, he had been unable to identify a clear diagnosis corresponding to [Plaintiff's] allegations." (*Id.* at 39). The ALJ pointed out that the examinations Dr. Kunsman appended to his opinion showed "objectively normal physical function identical to that of his initial consultative examination." (*Id.*). As such, the ALJ found Dr. Kunsman's opinion to be unpersuasive. (*Id.*).

As recounted above, the ALJ pointed to multiple examples in which Dr. Kunsman's opinion was contradictory to Dr. Kunsman's own objective findings and to the record as a whole; thus, the ALJ analyzed supportability and consistency. Moreover, it was proper for the ALJ to consider the fact that Dr. Kunsman's opinion was supported only by Plaintiff's subjective complaints because the ALJ had already properly discounted Plaintiff's subjective complaints. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("A physician's opinion of disability premised to a large extent upon the claimant's own

accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted."); *see also* Section III.A, *supra*. For these reasons, the Court finds no reversible error in the ALJ's treatment of Dr. Kunsman's opinions.

### ii. Dr. Johnson

Plaintiff argues that the ALJ "failed to provide a rational explanation supported by substantial evidence and failed to articulate and explain the ALJ's rationale to reject the medical opinions." (Doc. 13 at 16 (emphasis omitted)). Specifically, Plaintiff argues first that "Dr. Johnson's assessment did not need to be accompanied by a narrative or explanation to be deemed supported and valid." (*Id.*). Plaintiff next argues that the ALJ "failed to reconcile [Plaintiff's] presentation at time-limited appointments with [Plaintiff's] functioning over an eight-hour workday." (*Id.* at 17 (emphasis omitted) (citation omitted)). Plaintiff further asserts that the ALJ erred in determining that evidence such as normal muscle strength, range of motion, and lack of acute distress contradicted Dr. Johnson's opinion regarding Plaintiff's chronic fatigue and fibromyalgia. (*Id.* at 17–19). Plaintiff reiterates that Dr. Johnson's opinion being based upon Plaintiff's subjective complaints is not a sufficient basis to reject Dr. Johnson's opinion. (*Id.* at 19).

Defendant argues first that the Ninth Circuit has accepted the discounting of a medical opinion set forth in a checkbox form with little to no explanation, noting that Plaintiff's case stating otherwise interpreted the prior version of the regulations. (Doc. 15 at 9 (citations omitted)). Defendants further assert that Dr. Johnson failed "to explain why Plaintiff had these specific limitations [such as fibromyalgia] despite his records documenting benign functional findings. (*Id.* at 11). Defendant points out that Dr. Johnson did not make any other, more relevant, objective findings that the ALJ ignored. (*Id.*). In sum, Defendant argues, Dr. Johnson did not support the limitations he assessed with any objective medical evidence; as such, his opinion was based on Plaintiff's subjective complaints, and thus properly discounted. (*Id.* at 12–13).

As the ALJ discussed, Dr. Johnson opined that Plaintiff was limited to "less than a full range of sedentary work," with some added limitations, including the need to change

position every one to twenty minutes and need for six "impairment-related absences from the workplace each month." (Doc. 8-3 at 39). However, the ALJ noted, Dr. Johnson "presented this opinion as a mere check box form, unsupported but for a restatement of [Plaintiff's] diagnoses, with[] no reference to objective evidence." (*Id.* at 39–40). Additionally, the ALJ pointed out that Dr. Johnson's observations showed that Plaintiff "demonstrated wholly normal physical function, with no signs of distress or focal neurological deficits." (*Id.* at 40). As such, the ALJ concluded that Dr. Johnson's opinion appeared to be based on Plaintiff's subjective complaints, not objective medical evidence, and thus was not persuasive. (*Id.*).

The Court first notes that the Ninth Circuit Court of Appeals indeed has "accepted the discounting of a medical opinion set forth in a checkbox form with little to no explanation" when addressing an ALJ's post-2017 evaluation of a medical opinion. *Kitchen v. Kijakazi*, 82 F.4th 732, 740–41 (9th Cir. 2023) (citing *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020)). Thus, any argument by Plaintiff that the ALJ improperly considered the "checkbox" nature of Dr. Johnson's opinion is unavailing. Like Dr. Kunsman, the ALJ properly found that Dr. Johnson's opinion was unsupported by his own observations and inconsistent with the objective medical record as a whole. The Court also reiterates that the ALJ did not err by finding that Dr. Johnson's opinion was based on Plaintiff's subjective complaints and thus discounting the opinion because the ALJ had already properly discounted Plaintiff's subjective complaints. *See* Section III.B.i., *supra*. Moreover, even if some of Dr. Johnson's (or Dr. Kunsman's, for that matter) normal objective findings were not related to the main impairments Plaintiff alleges,[1] the fact remains that neither doctor provided any objective *support* for their opinions, which is required to be persuasive. Therefore, the ALJ did not err on this ground.

///

---

[1] For example, the ALJ noted Dr. Kunsman's objective finding of Plaintiff's normal cardiovascular, respiratory, and circulatory function. While these findings may not directly relate to, for example, fibromyalgia, the inquiry when evaluating medical opinion evidence is not whether a physician's normal findings relate specifically to each of Plaintiff's impairments. Instead, the inquiry is whether the medical opinion is supported by objective medical evidence and/or consistent with the medical record as a whole.

- 13 -

**IV. CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 22nd day of April, 2024.

*/s/ James A. Teilborg*
James A. Teilborg
Senior United States District Judge